# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

KORIE ELIZABETH STEVENS, )
)
        Plaintiff, )
)
        v. )   Case No. CIV-16-190-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
        Defendant. )

## OPINION AND ORDER

The claimant Korie Elizabeth Stevens requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born April 5, 1975, and was thirty-nine years old at the time of the administrative hearing (Tr. 59, 228, 232). She has a high school education and three years of college, and has previously worked as a pharmacy technician (Tr. 75, 83-84, 250). The claimant alleges that she has been unable to work since February 16, 2010, due to degenerative disc disease, panic attacks, osteoarthritis, diabetes, gout, dysthymic depression, fibromyalgia, lack of cartilage in her knees, tennis elbow, and bilateral carpal tunnel syndrome (Tr. 249).

### Procedural History

On May 29, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on June 18, 2013, she applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 10, 2015 (Tr. 33-47). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that she was limited to semi-skilled work (work which requires understanding, remembering, and carrying out some detailed skills, but does not require doing more complex work duties) where interpersonal contact with supervisors and coworkers is on a superficial work basis, contact with the public is occasional, and where there are only occasional changes in the workplace (Tr. 38). Additionally, the ALJ found that the claimant could attend and concentrate for extended periods with normal work breaks (Tr. 38). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, janitor and laundry worker I (Tr. 46).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinion of treating physician Dr. Carol Gambrill. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ determined that the claimant had the severe impairments of morbid obesity, diabetes mellitus, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, depression, and anxiety, but that her alleged fibromyalgia, gout, carpal tunnel syndrome, tennis elbow, migraine headaches, and asthma were non-severe (Tr. 35-36). The relevant medical records as to the claimant's physical

impairments reveal that she established care with orthopedist Dr. Chad Crawley on January 3, 2011 (Tr. 351-55). At this initial appointment, Dr. Crawley noted the claimant weighed over 350 pounds, had an antalgic gait pattern, and had decreased range of motion in her lumbar spine (Tr. 351). He also noted she had good range of motion in her knees ("almost hyperextension"), and no evidence of instability, but experienced pain along the medial joint line of both knees (Tr. 351). Dr. Crawley diagnosed the claimant with moderate osteoarthritis in her knees and a possible medial meniscus tear in her right knee (Tr. 351). An MRI of the claimant's right knee conducted on January 7, 2011, revealed maceration of the medial margin of the medial meniscus, edema of the medial collateral ligament, a small joint effusion, and an injury or degenerative change in both the medial epicondylar region and the medial tibial plateau region (Tr. 360). Thereafter, Dr. Crawley administered corticosteroid injections in the claimant's right knee in January 2011, September 2011, October 2012, and June 2014, and in both knees in March 2012, March 2013, and October 2013 (Tr. 340, 345, 349, 479-80, 482-83). Additionally, Dr. Crawley administered a series of three viscosupplement injections in the claimant's right knee in October 2011 (Tr. 341-43). A whole body bone scan performed on November 11, 2012, revealed a likely degenerative or stress related right knee injury, but no spinal abnormalities (Tr. 373). In a treatment note dated March 15, 2013, Dr. Crawley indicated an x-ray of the claimant's right knee taken that day revealed severe varus deformity with bone on bone contact in the medial department, lateral psuedosubluxation of the tibial plateau, advanced arthritic changes at the patellofemoral joint, and spur formation in all three compartments (Tr. 484). His impression was end stage degenerative joint disease

of the right knee (Tr. 484). At a follow-up appointment on October 17, 2013, Dr. Crawley noted the claimant did well with her prior injections, and on examination found mild swelling, effusion, and crepitation in her knees; reduced range of motion bilaterally; and pain with active range of motion testing (Tr. 479-80). By June 30, 2014, the claimant's range of motion in her right knee improved, but remained reduced (Tr. 511).

Dr. Ronald Schatzman conducted a physical consultative examination of the claimant on August 15, 2013 (Tr. 460-69). He noted there was no edema in her knees, and stated that due to her size, he "basically [couldn't] do a knee exam," but found full range of motion in her knees (Tr. 462-64). Additionally, Dr. Schatzman found the claimant was non-tender with full range of motion in her cervical spine, thoracic spine, and lumbar-sacral spine (Tr. 462-64). Dr. Schatzman noted the claimant had a broad-based waddling gait consistent with her weight and did not require a walking aid (Tr. 462). He diagnosed her with morbid obesity, diabetes mellitus, and tobacco abuse, and by history, gout, panic attacks, fibromyalgia, carpal tunnel, and knee pain (Tr. 462).

The claimant established care with Dr. Carol Gambrill on August 8, 2014, but the record does not contain any treatment notes from this initial visit (Tr. 538, 569). Thereafter, Dr. Jennifer Kim, supervised by Dr. Gambrill, treated the claimant for, *inter alia,* obesity, back pain, and diabetes (Tr. 562-74). An x-ray of the claimant's lumbar spine taken on September 26, 2014, revealed stable lumbosacral discogenic and spondylotic degenerative changes and no acute radiographic abnormality (Tr. 577). Dr. Kim's physical examination of the claimant on December 8, 2014, was normal except for her finding that the claimant was obese and had a protuberant abdomen with scarring

(Tr. 572). In the claimant's treatment plan for obesity, Dr. Kim noted she "will continue ambulating [and] seeing a nutritionist." (Tr. 572). At a follow-up appointment on January 12, 2015, the claimant reported she was tolerating her diet and activity, and that using a cane relieved some of her knee pain (Tr. 562). Dr. Kim's physical examination was normal, and she recommended that the claimant remain active and continue with her diet (Tr. 566).

Dr. Gambrill completed a form titled "Physical Residual Functional Capacity Questionnaire" on November 5, 2014, and stated her opinion was applicable beginning August 8, 2014 (Tr. 538-42). She opined that during an eight-hour work day, the claimant could sit in one-hour increments for about four hours total, could walk one block before needing to rest, and could stand in forty-five minute increments for less than two hours total (Tr. 538-542). Additionally, she opined that the claimant needed to walk for five minutes every hour, needed a sit/stand option allowing her to change positions at will, and would likely need unscheduled breaks every two hours for fifteen minutes at a time (Tr. 540). As to postural limitations, Dr. Gambrill found that the claimant could frequently lift less than ten pounds and occasionally twist, but could never stoop, bend, crouch, or climb ladders or stairs (Tr. 541). Dr. Gambrill further indicated that the claimant would be absent from work more than four days per month (Tr. 541). On a form titled "Medical Opinion Re: Sedentary Work Requirements," Dr. Gambrill further opined that the claimant required an assistive device for even occasional standing and/or walking, could not sustain activity at a pace with the attention to task required in the competitive workplace, would have significant difficulty concentrating due to

-7-

symptomology, could not sustain normal work stress, and could not attend any employment on a sustained basis (Tr. 537). As support for these opinions, Dr. Gambrill noted the claimant had osteophytes in her lumbar spine, lumbar degenerative joint disease, and osteoarthritis in her knee, and was seeing an orthopedist for her knee, whose records Dr. Gambrill further noted were "pending." (Tr. 537-38).

On September 9, 2013, State agency physician Dr. Kenneth Glass reviewed the record and found that the claimant could perform the full range of medium work (Tr. 113-14). His findings were affirmed on review (Tr. 126-27).

At the administrative hearing, the claimant testified she was unable to work due to a herniated disc, degenerative disc disease, osteoarthritis, inability to concentrate, pain in her knees, and panic attacks (Tr. 64). She further testified that she could sit for fifteen minutes before needing to change positions, could walk less than five minutes before needing to sit down, spends about five hours each day lying down, and was unable to walk stairs, kneel, crouch, crawl, stoop, and balance (Tr. 65-66). As to her daily activities, the claimant stated that she sits down when she cooks, uses a riding cart when she grocery shops, does not attend her children's school activities, and that her children do most of the sweeping and mopping, carry in all of the groceries, and assist her with bathing and dressing (Tr. 70-73, 81).

In his written opinion, the ALJ summarized the medical evidence, the claimant's function report, and her hearing testimony. He gave great weight to the state agency physicians' opinion that the claimant could perform medium work, finding such opinions were well supported by the objective evidence, including the claimant's lumbar MRI,

knee x-rays, and whole body scan (Tr. 43). The ALJ gave limited weight to Dr. Gambrill's opinion that the claimant could lift no more than ten pounds and was unable to sit more than four hours or stand/walk up to two hours, finding it was not supported by the longitudinal treatment record (Tr. 43). The ALJ also discounted Dr. Gambrill's opinion because she began treating the claimant shortly before issuing it, and because it conflicted with her own treatment notes as well as the objective evidence, specifically the September 2014 imaging of the claimant's lumbar spine, the claimant's daily activities, and her testimony as to her prescribed use of an assistive device (Tr. 43). Additionally, the ALJ noted that Dr. Gambrill was a family practice physician, not an orthopedic specialist (Tr. 43). He discussed, but did not specifically weigh, the opinion of consultative examiner Dr. Schatzman (Tr. 40-41).

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the

frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted].

The ALJ was required to evaluate for controlling weight Dr. Gambrill's opinions as to the claimant's functional limitations. Dr. Gambrill's November 2014 Medical Source Statement ("MSS") contained functional limitations that the ALJ rejected partly because he determined that her opinion was not supported by the objective evidence and not consistent with the medical record as a whole (Tr. 43). The ALJ supported these conclusions by citing to the claimant's September 2014 lumbar imaging and by noting her daily activities (Tr. 43). In making such findings, however, the ALJ overlooked substantial evidence related to the claimant's right knee, including Alpha Pain Management providers' examination findings (consistently showed a combination of tenderness, crepitus, and/or stiffness and guarding on range of motion testing), March

2013 right knee x-ray (interpreted as end stage degenerative joint disease), and Dr. Crawley's examination findings (consistently showed a combination of tenderness, swelling, mild crepitus, effusion, and/or reduced range of motion) (Tr. 339-53, 360, 479-84, 531-33, 579-84, 597-605). This is clearly relevant where the claimant's knee impairment has a direct effect on her ability to stand, walk, and sit, and is directly affected by her obesity. Thus, the ALJ erred by failing to discuss *all* of the evidence related to the claimant's impairments and citing only evidence favorable to his finding of non-disability. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

Additionally, the ALJ failed to explain why the claimant's documented reduced range of motion (noted by Dr. Crawley and Alpha Pain Management providers), continued right knee pain (supported by MRI and x-rays), and morbid obesity nevertheless enabled her to perform medium work, with its attendant total sitting/standing requirements and lift/carry requirements in an eight-hour workday. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects.") [citation omitted]. This was particularly important here since the ALJ rejected Dr. Gambrill's treating physician opinion, summarized without analysis Dr. Schatzman's consultative

examination, but adopted the state agency physicians' opinion (which pre-dates Dr. Gambrill's). *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991).

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**